UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

LOUIS ROSARIO,

      Plaintiff,

               **MEMORANDUM & ORDER**

   -against-          13-CV-400 (PKC)

LOCAL 1106 TRANSPORT WORKS OF
AMERICA and TRANSERVICE LEASE
CORPORATION,

      Defendants.

----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

  Plaintiff Louis Rosario's Complaint principally alleges that he was wrongfully terminated by his former employer, Transervice Lease Corporation ("Transervice" or "Employer"), and inadequately represented by his union, Transport Workers of America, Local 1106 ("Local 1106" or "Union"),[1] in the resulting grievance proceedings. (Dkt. 1 ("Compl.") ¶¶ 1, 10, 17, 21.) Transervice moves to dismiss Rosario's Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that Rosario's action is time-barred under the relevant statute, § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. For the reasons set forth below, Transervice's motion to dismiss is GRANTED.

---

[1] To this date, Defendant Local 1106 has failed to appear.

## BACKGROUND

A. <u>The Facts</u>[2]

This action arises from Plaintiff's employment, and subsequent termination, as a Master-Mechanic for Transervice. (Compl. ¶¶ 9, 12.) Defendant Transervice is a New York corporation located in Queens that provides maintenance and repair services for automotive vehicles. (Baumgarten Decl., Ex. C[3] at 2.) Defendant Local 1106 is an unincorporated labor organization that collectively bargains for and represents all auto-mechanical maintenance personnel, including Rosario, who service Verizon Corporation ("Verizon") owned vehicles throughout the United States. (Compl. ¶ 4.) Local 1106 and Transervice are party to a collective bargaining agreement ("CBA") that established wages, hours, and other terms and conditions of employment for Rosario and his fellow union members. (*Id.* at 4, 8, 9.)

On January 17, 2008, Rosario was assigned to repair a Verizon-owned vehicle that had been brought to Transervice to repair an anti-freeze leak. (Compl. ¶ 10; *see also* Baumgarten Decl., Ex. C at 2.) Rosario requisitioned an assortment of parts, which he allegedly used to make the assigned repairs. (*Ibid.*) The following day, a Verizon technician took the vehicle out and within an hour its engine seized, causing the vehicle to completely break down. (*Ibid.*) On

---

[2] The Court recites only those facts necessary to resolve this Motion, which are drawn from (i) the allegations in Rosario's Complaint, assumed to be true for purposes of this Motion, *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 173 (2d Cir. 1998), and (ii) certain exhibits accompanying the parties' briefs that are appropriately considered without converting the Motion into one for summary judgment. *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

[3] Exhibit C to the Baumgarten Decl. (Dkt. 12-2) is a copy of the December 3, 2010 Opinion and Award of Arbitrator Richard Domanico that deals with the dispute underlying this action. (Dkt. 12-3.)

January 24, 2008, representatives of both the Union and Transservice together inspected the vehicle and concluded that Rosario had never made the alleged repairs. (Baumgarten Decl., Ex. C at 2-3.) Later that evening, Rosario was suspended by Transservice for "falsifying company documents." (Compl. ¶ 10.)

The CBA between the Union and the Employer permits "summary discharge," as opposed to "progressive discipline," only upon "just cause." (Baumgarten Decl., Ex. B at 10.)[4] Any grievances related to discharge must be resolved through "step hearings," and if those prove fruitless, the grievance is submitted to final and binding arbitration before a neutral arbitrator. (Baumgarten Decl., Ex. B at 9-10.) Specifically, Article 15:04 of the CBA provides that, "[i]f the parties fail to adjust the grievance, the parties will within 45 calendar days refer the dispute to the New York Employment Relations Board by written notice requesting that the agency provide panels from which the arbitrator will be selected." (*Id.* at 9.)

Pursuant to Article 15.02 of the CBA, on January 31, 2008, a "Step 1" grievance hearing was held without resolution. (Baumgarten Decl., Ex. B at 9; Compl. ¶ 11.) Both parties then agreed to waive a "Step 2" hearing. (Baumgarten Decl., Ex. C at 3.) On February 5, 2008, Transservice permanently terminated Rosario's employment. (Compl. ¶ 12.) Thereafter, Rosario requested that Local 1106 submit his grievance to arbitration.[5] (*Id.* ¶ 13.)

Plaintiff alleges that Local 1106 did not file a petition to refer the dispute to the New York State Employment Relations Board ("NYERB") within the required 45-day period, and only filed such application on January 11, 2010, nearly two years later. (*Id.* ¶ 19.) As a result of

---

[4] Exhibit B to the Baumgarten Decl. is a copy of the CBA between Defendants Transservice and Local 1106. (Dkt. 12-3).

[5] Rosario does not specify the date he allegedly submitted his request to Local 1106.

3

that application, on November 5, 2010, Arbitrator Richard Domanico (the "Arbitrator") held a hearing at which both the Union and the Employer parties were entitled to present witness testimony and other evidence. (Baumgarten Decl., Ex. C at 2; Compl. ¶ 14.) On December 3, 2010, the Arbitrator issued an opinion finding the case "not arbitrable" and denying the grievance because Local 1106 failed to submit an application for arbitration within "45 calendar days" of the dispute as required by CBA Article 15:04. (Baumgarten Decl., Ex. C at 5; Compl. ¶ 24.)

B.  *Procedural History*

Rosario commenced this action on January 23, 2013, asserting a "hybrid" claim under § 301 of the LMRA against both Defendants Transervice and Local 1106. (Compl. ¶¶ 27, 28.) Plaintiff also asserts a negligence claim against only Defendant Local 1106. (*Id*. ¶ 29.)

On July 18, 2013, Transservice filed an unopposed letter requesting leave to file a motion to dismiss the complaint. (Dkt. 7.) On July 26, 2013, the Court set a briefing schedule on Transervice's proposed motion to dismiss. Rosario timely received service of Transervice's motion to dismiss and accompanying memorandum of law on August 23, 2013. (Dkt. 10.) Plaintiff did not file his opposition, as scheduled, on September 27, 2013. In fact, neither the Court nor Local 1106 heard from Plaintiff until, October 16, 2013, three full weeks after his opposition was due, and five days after Transervice's reply was to be filed and the parties' fully briefed motions submitted to the Court. In his October 16th letter, Rosario's counsel requested an extension of time, citing a calendaring mistake.[6] (Dkt. 13.) That day, the Court excused Rosario's failure and extended his time to file to October 21, 2013. Rosario again failed to

---

[6]    Without explanation, Rosario's counsel stated that he "discovered this error on October 11, 2013," yet he did not notify the Court of his failure to serve his opposition or request an extension until October 16, 2013.

4

timely file. Only after the Court deemed Transervice's motion unopposed, on October 24, 2013, did Rosario ultimately file his opposition. (Dkt. 14.) In any event, for purposes of expediency and to avoid prejudice to Rosario at the expense of his counsel, the Court will consider Plaintiff's arguments.

## DISCUSSION

I. <u>Standards of Review</u>

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, in order "[t]o survive a motion to dismiss under [Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In assessing plausibility on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Iqbal,* 556 U.S. at 664, and afford the plaintiff every reasonable inference. *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir. 2009). However, allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 681 (internal quotation marks and citations omitted).

According to *Iqbal/Twombly*, the Complaint survives a motion to dismiss, as long as its allegations of "factual matter, accepted as true" sufficiently "raise a right to relief above the speculative level." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56. At the same time, the Complaint cannot conclusorily recite the elements of a claim. *Ibid.* The factual allegations are sufficient when they allow this Court, at a minimum, to infer that a claim is plausible—an

5

inference which is more than possible, but less than probable—and thereby warrants proceeding with discovery. *Ibid.*

Where a defendant raises a statute of limitations defense in a pre-answer motion to dismiss, such a motion "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008).[7] "An action should be dismissed pursuant to Rule 12(b)(6) where documents properly considered on a motion to dismiss reveal that the action is time barred." *Noboa v. MSC Crociere S.P.A.*, 2009 WL 1227451, at *2 (S.D.N.Y. May 5, 2009). While a court generally may only consider facts stated in the complaint in deciding a motion to dismiss under Rule 12(b)(6), documents incorporated therein by reference "are deemed part of the pleading and may be considered." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Even where a document is not attached or incorporated by reference, the Court may consider it where a plaintiff "either possessed or knew about" and relied upon it in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).

II. <u>Rosario's Hybrid § 301 LMRA Claim is Time-Barred</u>

Rosario's claims against Transervice for wrongful discharge and the Union for breach of the duty of fair representation combine to create a single "hybrid" cause of action under § 301 of the LMRA. *See DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 169-171 (1983); *Cohen v.*

---

[7] Transervice moves to dismiss under both Rule 12(b)(1) and 12(b)(6). Where, as here, "the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss. Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter." *Ghartey,* 869 F.2d at 162 (citations omitted).

*Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 68 (2d Cir. 1995). While "[s]uch a suit, as a formal matter, comprises two causes of action," the Supreme Court has explained that "the two claims are inextricably interdependent," such that to prevail against either defendant, plaintiff "must not only show that [his] discharge [by the employer] was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello,* 462 U.S at 164-65 (citations and quotation marks omitted). Put another way, to establish a "hybrid" § 301 claim, "a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members."[8] *See White v. White Rose Food, a Div. of DiGiorgio Corp.,* 237 F.3d 174, 178 (2d Cir. 2001). As a result, the elements plaintiff must prove are the same whether the plaintiff sues the union, the employer, or both. *See DelCostello,* 462 U.S. at 165.

A "hybrid" duty of fair representation claim is subject to a six-month statute of limitations. *DelCostello,* 462 U.S. at 169-72 (adopting the six-month limitations period provided by Section 10(b) of the National Labor Relations Act); *Cohen,* 68 F.3d at 68. The six-month clock begins to run from "the time when the union member knew or reasonably should have known that a breach of the duty of fair representation had occurred." *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 55 (2d Cir. 2003) (internal quotation marks and alterations omitted); *see Maldonado v. George Weston Bakeries*, 441 F. App'x 808, 809 (2d Cir. 2011) (finding plaintiff's hybrid § 301 claim untimely because it was filed more than seven months after he "knew" of his claim); *Ode v. Terence Cardinal Cooke (HCC)*, 08-CV-1528, 2008 WL 5262421, *2-3

---

[8] The parties do not contest that this action, at least as it pertains to Transervice, is based on a hybrid § 301 claim. (Dkt. 12-1 ("Def. Br.") at 3; Dkt. 14 ("Pl. Opp.") at 3-5.)

(S.D.N.Y. Dec. 12, 2008) (denying plaintiff's claim as untimely because it was filed more than six months after plaintiff had knowledge the claim accrued.)

Plaintiff appeared at the November 5, 2010, NYERB hearing on his grievance (Compl. ¶ 15; Baumgarten Decl., Ex. C at caption page), and the Arbitrator issued the resulting decision denying Rosario's grievance on December 3, 2010. (Compl. ¶ 24.) Where, as here, the Union's alleged breach of duty was the subject matter of a grievance that ran its full course, the issuance of the final disposition commences the statute of limitations. *See Ghartey,* 869 F.2d at 166 (interpreting *DelCostello*. In this case, the Union's breach was explicit—the Arbitrator's decision specifically cited the Union's failure to bring the grievance within the required 45-day period as its sole basis for denial. (Baumgarten Decl., Ex. C at 5.) Rosario was therefore well aware of the Unions' failure to take appropriate action regarding his termination at that time, December 3, 2010. *See Ghartey,* 869 F.2d at 165 ("[A] breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains."). Rosario did not file the Complaint in this action until January 23, 2013, more than two years after Rosario had notice that the arbitration denial had issued. (Dkt. 1.) Accordingly, Rosario's complaint in this Court was not timely filed.

Rosario argues that Transervice should be equitably estopped from asserting a statute of limitations defense because he commenced this action when he realized that the Union "would not assist [him] further." (Dkt. 14-1 ("Rosario Aff.") ¶ 4.) To trigger the doctrine of equitable estoppel, a plaintiff must show that: (i) "the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it"; and (ii) "the plaintiff reasonably relied on that misrepresentation to his detriment." *Wall v. Constr. & Gen. Laborers' Union,*

*Local 230*, 224 F.3d 168, 176 (2d Cir. 2000) (quoting *Buttry v. Gen. Signal Corp.,* 68 F.3d 1488, 1493 (2d Cir. 1995)).

Here, Plaintiff's complaint is devoid of any allegation that the Union misled Rosario or that he relied on any such misrepresentation. In any event, as discussed, Plaintiff did not bring this action for more than two years after he had concrete knowledge of the Union's alleged breach in the form of the Arbitrator's denial of his grievance.[9] *See Ghartey,* 869 F.2d at 166. And once a plaintiff "learns of the union's breach," the union's subsequent failure to fairly represent plaintiff "cannot be treated as a continuing violation that preclude[s] the running of the limitations period." *Buttry,* 68 F.3d at 1492 (citation and quotation marks omitted); *see also Nada v. 1199 SEIU Health Care Employees Union*, 09-CV-5796, 2010 WL 532308, *2 (S.D.N.Y. Feb. 11, 2010). Thus, the filing of this action in January, 2013, more than six months after Plaintiff acquired knowledge of a potential violation, was untimely even if there had been any prior misrepresentation. *See Buttry*, 68 F.3d at 1493.

For the foregoing reasons, Plaintiff's claim against Transervice is dismissed with prejudice as any attempt to cure would be futile. *See, e.g., Doyle v. United Airlines, Inc.*, 914 F. Supp. 2d 325, 339 (E.D.N.Y. 2012) (denying plaintiffs time-barred hybrid LMRA § 301 claim with prejudice); *Ljutovic v. 530 E. 86th St., Inc.*, 05-CV-9846, 2006 WL 2524077, *5-7 (S.D.N.Y. Aug. 31, 2006) (denying leave to amend to include a time-barred hybrid § 301 claim as futile).

Although the motion to dismiss was brought by Transervice, not the Union, the hybrid § 301 claim necessarily implicates Local 1106. *See DelCostello,* 462 U.S at 165 ("The employee

---

[9] "The inaction of the Union, while not commendable, does not permit the statute of limitations to be tolled." *Cohen*, 68 F.3d at 68.

may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both."). To establish a § 301 claim, the plaintiff must prove fault by both the Employer and the Union "in order to succeed against either." *Russo v. 210 Riverside Tenants, Inc.,* 10-CV-914, 2011 WL 166928, at *3 (S.D.N.Y. Jan. 19, 2011). Having reached and dismissed the claim against Transervice, the Court now *sua sponte* dismisses with prejudice the claim against Local 1106. *See, e.g., Rebaudo v. AT & T,* 562 F. Supp. 2d 345, 353 (D. Conn. 2008) (dismissing a hybrid LMRA claim against an employer on its motion and *sua sponte* against plaintiff's union "because the duty of fair representation claim is … part of [plaintiff's] hybrid LMRA claim against" both defendants).

III. Rosario's Negligence Claim Against Defendant Local 1106

Seeing the writing on the wall, Plaintiff argues that "regardless of the disposition of the first cause of action, Plaintiff's claim for negligence as against his union remains actionable." (Pl. Opp. at 5.) Without opining on the merits, it is clear Plaintiff's negligence claim should be heard in State court. Where, as here, any federal "claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7 (1988); *see also Oneida Indian Nation of New York v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011) ("we have repeatedly said that 'if a plaintiff's federal claims are dismissed before trial, 'the state law claims should be dismissed as well.'"); 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction)." For those reasons, the Court declines to exercise

supplemental jurisdiction over this claim and dismisses it without prejudice to being brought in State court. *See Oneida Indian Nation of New York,* 665 F.3d at 444.

## CONCLUSION

For the foregoing reasons, this Court dismisses with prejudice Plaintiff's Hybrid § 301 LMRA claim against both Transervice and Local 1106 based on the applicable six-month statute of limitations. In light of that ruling, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining State law claim against Local 1106 and dismisses it without prejudice to it being brought in State court. The Clerk of the Court is directed to close this case.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: January 27, 2014
      Brooklyn, New York